RUFUS J. TRIMBLE, as Executor, etc., of RUFUS W. WEEKS, Deceased, Plaintiff, v. NEW YORK LIFE INSURANCE COMPANY and Another, Defendants.

First Department, February 11, 1932.

*William R. Willcox* of counsel [*Joseph R. Kelley* with him on the brief; *Swiger, Scandrett, Chambers & Landon,* attorneys], for the plaintiff.

*Ferdinand H. Pease* of counsel [*Louis H. Cooke,* attorney], for the defendants.

O'MALLEY, J. The controversy submitted involves principally the question as to whether the plaintiff executor is entitled to receive a certain death benefit under the defendant company's retirement plan by reason of the death of his testator, a former officer of such defendant. This death benefit in a sum claimed to be correct by the defendant company, has been paid by it to the defendant Taylor, joined here as a proper party, so that she may be bound by any judgment that the court may direct.

The plaintiff in the submission claims not only the right to such death benefit in a sum larger than that computed by the defendant insurance company, but seeks further a balance of retirement income in a certain amount, together with punitive or exemplary damages of $5,000.

As the amount of punitive or exemplary damages must ordinarily be assessed by the trier or triers of the facts, this part of the submission, at least, if not the entire submission, might properly be dismissed. The rule is that all *facts* in a submission must be stipulated, and if facts other than those stipulated, or which must be inferred therefrom, are necessary to a determination of the controversy, the court will dismiss it. (Civ. Prac. Act, §§ 546, 548; *Rushing* v. *Commercial Casualty Ins. Co.,* 251 N. Y. 302; *Lafrinz* v. *Whitney,* 233 id. 107; *General Commercial Co., Ltd.,* v. *Butterworth-Judson Corp.,* 198 App. Div. 799; *Kinsey Realty Co., Inc.,* v. *Speidel,* 203 id. 878.) Punitive damages are predicated upon malice which is a matter of fact or an inference, to be drawn from the facts, and is for the jury. (*Smith* v. *Matthews,* 152 N. Y. 152, 156; *Conners* v. *Walsh,* 131 id. 590; *Pickle* v. *Page,* 225 App. Div. 454; affd., 252 N. Y. 474; 1 Clark New York Law of Damages, § 56.)

However, as will hereinafter be made to appear, sufficient facts have been submitted to permit the court to direct a proper judgment and the submission is, therefore, retained.

Plaintiff's decedent was born August 11, 1846, and died April 18, 1930, in his eighty-fourth year. He had been an employee of the defendant insurance company for over fifty-eight years, having been its chief actuary, a vice-president at a salary of $30,000 a year, and, at the time of his death, was on the defendant's retired list as of April 15,· 1927, at an income of $20,000 a year. The defendant Taylor had been adopted by decedent and his wife early in life. She was, however, not a relative by blood or a connection by marriage of the decedent.

Prior to the adoption of the retirement plan hereinafter mentioned, the defendant company had a custom of annually passing a resolution providing for a death benefit of such of its employees as might die during the ensuing year. On December 10, 1924, it passed such a resolution, in the preparation of which the decedent had assisted. This resolution provided that such death benefit would be paid " within the discretion and upon the direction of the Office Committee * * * to such person or persons as said Committee shall deem best."

On or about June 28, 1925, the decedent delivered to one Buckner, a vice-president of the company, a letter referring to the death benefit and a statement of the decedent with respect to the desired objects of his bounty. He ended his letter as follows: " In view of all this, I am hoping that when the post-mortem is to be paid you will use your power to have it paid into my estate, as my Will counts upon. I feel that such action will be congenial to your long friendship, which has been so beautifully manifested in the past."

This communication was drawn to the attention of the office committee by Buckner, with a memorandum as follows: " Mr. Rufus W. Weeks has written me a personal communication setting forth his obligations of financial assistance to some of his relatives who are more or less dependent upon him, and in which he states that he is making provision in his will for a proper division of his estate for the purpose of continuing the assistance to his dependents.

" He states furthermore that his estate will almost exclusively consist of his life insurance and any Death Benefit which the Office Committee may authorize to be paid under the Resolution of the Board.

" He, therefore, makes a special request that any such Death Benefit which might fall due at his death, be paid to his estate rather than to any individual whom the Committee might determine.

" I, therefore, recommend that his request be spread upon the Minutes of the Office Committee for its consideration at his death.

" The reasons for this request are fully set forth in his personal communication to me which is herewith filed in a sealed envelope duly inscribed —

" Office Committee Files

·" Letter from Rufus W. Weeks

to

Vice-President Buckner, re Death Benefit, for consideration when the event occurs."

On June thirtieth Buckner wrote decedent: " The Death Benefits provided by Resolution of the Board are fully set forth in the folder which you undoubtedly know all about, but copy of which I enclose in case you should have forgotten any of the terms thereof. You will note that the payment and the person to receive payment is in the discretion of the Office Committee. I am filing with the Office Committee a memorandum stating your request that any Death Benefit which the Committee may deem falling due at your death, be paid to your Estate and not to an individual, for reasons which you have set forth in a personal communication to me. This will be made a matter of record so it will not be overlooked."

On July 1, 1925, the office committee spread Buckner's memorandum upon the minutes as follows: " (Sec. 13.) Rufus W. Weeks' Request Regarding The Payment of The Death Benefit That May Accrue At His Death.— The Committee approved the request contained in the following memorandum submitted by Vice-President Thomas A. Buckner under date of June 30th, 1925."

On August 1, 1926, the company adopted a retirement plan which, on April 11, 1928, was amended so as to include a death benefit. This death benefit plan specifically provided that such would be paid " to the beneficiary whom the employee may have *designated in a writing filed* with and accepted by the company during his or her lifetime," in failure of which designation, the payment was to " be made to such person or persons as *the company may select*." (Italics ours.) At the time of decedent's death, April 18, 1930, this plan with the provision last quoted was in full force and effect.

The decedent never filed a designation after the adoption of the retirement plan; but it is stipulated that by reason of his letter to Buckner, the resolution of the office committee, the letter of Buckner to decedent, and conversations repeating the contents of such letters, the decedent did not make or attempt to make any designation of a beneficiary of a death benefit and believed that upon

his death the company would pay any such death benefit to his estate.

After the death of the decedent and on April 30, 1930, the office committee voted to pay the death benefit to the defendant Taylor and did pay her such benefit on the sum as computed by it. Its action was based on a recommendation of Buckner, calling attention to the previous minutes of the office committee meeting of July 1, 1925, and a statement that the will of the decedent dated January 26, 1929, provided for the payment of the residuary estate including the death benefit to be paid to one Sarah Williams Walker, whereas the request of Weeks filed with the company gave as his reason for the payment of the death benefit to his estate, the wish to benefit certain named relatives and which request did not mention the said Sarah Williams Walker.

We are of opinion that plaintiff may not recover upon any theory advanced and that judgment must be directed for the defendant. Whether either of the plans above set forth was at all times a mere voluntary bounty without contractual features (*McNevin* v. *Solvay Process Co.*, 32 App. Div. 610; affd., 167 N. Y. 530), or created vested rights in the beneficiaries (*Matter of Graef* v. *Department of Health*, 131 Misc. 258), is not necessary to decide. The plaintiff, under any construction given to them, had not acquired any legal right as to the party to whom payment was to be made upon his death.

The correspondence above detailed clearly demonstrates that the decedent well knew that his request with respect to the beneficiary of the death benefit was but a request and that final decision would be with the office committee. Buckner's letter to him left no doubt as to this.

So far as the retirement plan is concerned, assuming that decedent might have designated a beneficiary, which designation would have been binding on the defendant upon his death, such action was never taken by him. His earlier request filed with the office committee may not be considered such a designation, antedating as it did the retirement plan. An offer may not be accepted until it is made and brought to the attention of the one accepting. Here the decedent's request was made not only long prior to the offer contained in the retirement plan, but at a time when, so far as the decedent knew, at least, such plan was not even contemplated.

Nor may the plaintiff succeed upon any theory of estoppel predicated upon facts stipulated to the effect that by reason of the decedent's letter to Buckner, the resolution of the office committee, the letter of Buckner to decedent, and the subsequent conversations, by reason of which he did not make or attempt to make any

beneficiary of the death benefit, he believed that such would be paid to his estate. As already pointed out, he well knew that any such reliance was apt to be thwarted as it was well understood that the designation still rested within the discretion of the office committee and that such discretion would be exercised at his death and not before. "An estoppel rests upon the word or deed of one party upon which another rightfully relies and so relying changes his position to his injury." (*Metropolitan Life Ins. Co.* v. *Childs Co.*, 230 N. Y. 285, 292.) Here the decedent did not change his position to his injury, nor fail to take steps that would improve such position, in reliance upon the word or deed of the defendant insurance company. Both by word and deed the insurance company had reserved its right in the matter and its decision was to be made in the discretion of its officers at the decedent's death. Even though the company had expressed an intention, which it did not, to make the death benefit payable to his estate, this would not have given rise to an estoppel. There is no fact here stipulated showing that the company's statements when made were not truthful. " Such a truthful statement as to the present intention of a party with regard to his future acts is not the foundation upon which an estoppel may be built." (*Metropolitan Life Ins. Co.* v. *Childs Co., supra,* 294.)

The remaining questions presented are (1) whether the defendant company has paid in full the amount of retirement income to which plaintiff's testator was entitled for the month of April, 1930, and if not (2) whether the plaintiff executor is entitled to the balance.

The retirement plan provided that the annual retirement income was to " be paid by the company to such employee, in *monthly installments,* during his or her lifetime," and it was further provided, " (9) Retirement incomes will cease with the *payment for the month* in which death or recovery from disability occurs, and any retirement income due and unpaid at the death of an employee shall be payable to such person or persons as the Company shall deem entitled to the same." (Italics ours.)

The decedent had been receiving a monthly retirement income of $1,666.65 which evidently had customarily been paid in two installments a month. In April, 1930, the decedent had actually received from the company the sum of $833.33 prior to his death. This constituted payment to April 15, 1930. Decedent died April eighteenth of the same year and the company has paid to the plaintiff executor the sum of $166.66, being the monthly *pro rata* income for the three days during which the testator lived after April fifteenth, making a total payment of $999.99 for the month of April, 1930.

We are of opinion that plaintiff's claim that defendant was obligated for a full month's payment of retirement income for April, 1930, must be sustained. As above indicated by italics, the Retirement Plan itself speaks of " monthly installments " and " payment for the month." The retirement income was, moreover, computed on an annual basis. If an employee was entitled under this plan to retirement income for any part of a month he was entitled to payment of such income for the full month. This seems to us to be the reasonable and proper construction to be given to the provisions of the retirement plan relating to income payment.

It is contended by the defendant company, however, that it is vested with discretion as to whom such payment shall be made. Assuming, without conceding, that this is so, such discretion has already been exercised in favor of the plaintiff to whom the company has paid the *pro rata* retirement income for the three days following April 15, 1930.

It follows, therefore, that there should be judgment for the plaintiff for the sum of $666.66, with interest from November 12, 1930, and that otherwise the defendant company should have judgment directed in its favor as above indicated.

FINCH, P. J., MERRELL, SHERMAN and TOWNLEY, JJ., concur.

Judgment directed for plaintiff for the sum of $666.66, with interest from November 12, 1930, and otherwise in favor of defendant company as indicated in the opinion.

Settle order on notice.